# HARRY O. BRAWNER

## vs.

# SUPERVISORS OF ELECTIONS.

*Constitutional Law—Referendum—Delegation of Legislative
Power—Soldiers' Bonus Act.*

The people of the State having delegated to the Legislature
the power of making its laws, that body cannot redelegate to
the people themselves the power and authority thus conferred
upon it, by making the validity of a statute affecting the whole
State dependent upon a vote of the people.          pp. 593-599

The State Constitution requiring a bill, in order to become
law, merely to pass the two houses of the Legislature and to be
approved by the Governor, the Legislature has no power to
add a further requirement, that of its approval by a majority
of the voters of the State.          pp. 600-602

Acts 1922, ch. 448 (Soldiers' Bonus Act), is invalid as being
made conditional upon the approval of a majority of the quali-
fied voters of the State.          p. 604

*Decided July 18th, 1922.*

Appeal from the Baltimore City Court (STEIN, J.)

Petition for mandamus by Harry O. Brawner against Wil-
liam Curran, Max Ways, and Frank Smith, constituting the
Supervisors of Elections of Baltimore City. From a judg-
ment overruling petitioner's demurrer to defendants' an-
swer, and dismissing the petition, petitioner appeals. Re-
versed.

The cause was argued before BOYD, C. J., BRISCOE,
THOMAS, PATTISON, ADKINS, and OFFUTT, JJ.

*Isaac Lobe Straus* and *Henry H. Dinneen,* with whom was
*Harry M. Benzinger* on the brief, for the appellant.

### Argument of Counsel.

The Government of Maryland, as organized under the State Constitution, was designed to be that of a representative republic. Article III thereof establishes the General Assembly as the law-making department of the State, and it is thereby prohibited from converting it into a pure democracy under which the people themselves enact their own laws. The organization of the law-making power is one of the principle purposes of all constitutions, and this end is effected by a system of *representation* whereby the people at stated periods delegate to citizens, by them chosen in the manner prescribed by the Constitution, the power and duty of enacting laws by which all are to be governed.

The general powers of legislation being conferred exclusively upon the Legislature, that body may not escape its duties and responsibilities by delegating such legislative power to the people at large. 6 *R. C. L. Const. Law*, p. 164, sec. 165; *Stanton* v. *Essex County,* 191 N. Y. 428; 12 *C. J.* 830, n. 71, 865, n. 96; *Cooley, Const. Lims.* (7th ed.), 163; *Sedgwick, Constructn. Const. and St.* (1st ed.), p. 164; *Railroad Co.* v. *Clinton Co.,* 1 Ohio St. 77, 87; *State* v. *Thompson* (Wis.), 43 L. R. A. (N. S.) 339; *Wright* v. *Cunningham,* 115 Tenn. 445; *State* v. *Hayes,* 61 N. H. 264, 325; *Opinion of the Justices,* 160 Mass. 586; *People* v. *Memphis Railroad,* 77 U. S. 50; *Lamont* v. *Lidwell,* 62 Mo. 188; *Downes* v. *Sidwell,* 182 U. S. 244; *Locke's Appeal,* 72 Pa. St. 491.

The question is no longer an open one in Maryland. *Bradshaw* v. *Lankford,* 73 Md. 430; *Levering* v. *Supervisors of Elections,* 137 Md. 288. In these cases this Court clearly showed that its previous decisions, such as *Fell* v. *State,* 42 Md. 71; *Hammond* v. *Haines,* 25 Md. 541; and *Burgess* v. *Pue,* 2 Gill, 9, 183; upholding the validity of a statute the operation of which was made dependent on the vote of the electorate, involved merely local statutes submitting local questions to local districts.

The argument that chapter 448 is a statute *in praesenti* to take effect upon a contingency is not even plausible. The referendum section of the act states in unambiguous language that the act is to be *null, void and of no effect whatever if a majority of votes are cast against it.* This is not a contingency, but the exercise of legislative power, and readily distinguishable from the acts passed upon by this Court in *State* v. *Kirkley,* 29 Md. 85; *Baltimore* v. *Clunett,* 23 Md. 449, and *Baltimore* v. *Northern Central Railway,* 21 Md. 93. They were complete, final ordinances and laws: their operation was merely suspended until the happening of a contingency. The vote of the people is not such a contingency. No argument can overcome the force and logic of the authorities cited, as well as *Boston* v. *Chelsea,* 212 Mass. 127; *Barto* v. *Nimrod,* 8 N. Y. 483, 489; *Locke's Appeal,* 72 Pa. 491.

In view of the reliance by the lower court upon the weight of authority, reference is made to the list of adjudicated cases in 6 *Am. & Eng. Enc. L.* (2nd ed.), p. 1021, sec. 2 (b) note, holding that legislative power cannot be delegated to the people in order that the wisdom or expendiency of a given law may be determined. That list includes the courts of last resorts of: The United States, California, Delaware, Georgia, Indiana, Iowa, Kentucky, Louisiana, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, Tennessee, Texas, Vermont, and Wisconsin.

*Alexander Armstrong, Attorney General,* and *Amos W. Woodcock, Assistant Attorney General,* with whom was *Allan H. Fisher, Assistant Attorney General,* on the brief, for the appellees.

As to whether a state-wide referendum attached to a state-wide law renders that law unconstitutional, there is much confusion in the earlier cases. The confusion arose from

different theories applied by different courts.  Some courts
held that a referendum was a delegation of power to the
people, and upon the theory of *delegatus non potest delegari*
it was held that such an act was void.  On the other hand
other courts held that a valid law may be passed to take effect
upon the happening of a future contingent event, even where
that event involves the assent to its provisions by the elec-
torate.  And the cases following that doctrine held that a
state-wide act dependent upon a state-wide vote was consti-
tutional.

Many of the courts fell into error by following the case
of *Parker* v. *Commonwealth,* 6 Barr, Pa. 507, decided in
1847.  The courts of Iowa, Michigan and Indiana, for ex-
ample, followed this rule.  The Maryland Court however,
(see *Fell* v. *State,* 42 Md. 71), calls attention to the fact
that the *Parker case, supra,* was overruled by *Locke's Appeal,*
72 Pa. State, 491.  It is true that in *Fell* v. *State,* 42 Md.
71, the Court of Appeals of Maryland was considering a
local act.  However, in this case the Court of Appeals dis-
tinctly rules that an act of the Legislature to take effect
upon the result of a popular election, whether local or gen-
eral, was valid.  On page 85 of the *Fell case* the Court dis-
tinctly holds that nothing was delegated by the General As-
sembly to the people.  This thought the Court expressed in
the following language: "Now what has been delegated to
the voters by this Act of Assembly?  Certainly not the pow-
er to make the law, or to repeal existing laws.  They are
called on by sec 1 simply to express, by their ballots, their
opinion or sentiment as to the subject-matter to which the
law relates.  They declare no consequences, prescribe no pen-
alties and exercise no legislative functions. The conse-
quences are declared in the law, and are exclusively the re-
sult of the legislative will.  The Act of Assembly is a 'per-
fect and complete law as it left the halls of legislature and
was approved by the Governor'; but by its terms, it was
made to go into operation in any district, upon the contin-

gency of a majority of the legal voters within the district, being ascertained to be in favor of the prohibition contained in sec 2. The question before us therefore resolves itself simply into this: May the Legislature constitutionally enact a law, and make its operation depend upon the contingency of the popular vote? It has never been denied that 'the Legislature may provide that an act shall not take effect until a future day, or until the happening of some particular event, or in some contingency thereafter to arise, or upon the performance of some specified conditions.' "

On page 86 of the same opinion the Court adopts the views of REDFIELD, C. J., in *State* v. *Parker,* 26 Vt. 365. This opinion is quoted at length in *Cooley's Constitutional Limitations,* 7th edition, page 170, and the learned author comments in the footnote on page 171 as follows: "This decision, though opposed to many others, appears to us entirely sound and reasonable." Other cases are cited, and the opinion of CHIEF JUDGE DIXON in *Smith* v. *Janesville,* 26 Wis. 291 is quoted at length. The opinion in the case of *Smith* v. *Janesville* is also approved by Judge Cooley, and in this opinion we find the following language: "There the law was submitted to the voters of that city, and here it was submitted to those of the state at large. What is the difference between the two cases? It is manifest, on principle that there cannot be any. The whole reasoning of that case goes to show that this act must be valid, and so it has been held in the best considered cases as will be seen by reference to that opinion." The rule thus laid down in *Smith* v. *Janesville* is still the law and has been quoted as authority in the recent Soldiers' Bonus case in Wisconsin. *State of Wisconsin* v. *Henry Johnson,* 175 N. W. 589, 7 A. L. R. 1617. And the Vermont case *State* v. *Parker,* 26 Vt. 365, has been reaffirmed in a very recent case. *State* v. *Scampini,* 77 Vt. 96, which quotes as authority *Slymer* v. *State,* 62 Md 237, and *Jones* v. *State,* 67 Md. 256.

OFFUTT, J., delivered the opinion of the Court.

Harry O. Brawner, a citizen, resident and tax payer of Baltimore City, filed in the Baltimore City Court a petition against the Supervisors of Election of Baltimore City, in which he asked that a writ of mandamus be issued out of that court commanding the respondents to refrain from printing on the official ballots to be used at the general election to be held in that city on November 7th, 1922, the proposition of the approval or disapproval of chapter 448 of the Acts of 1922, commonly called the "Soldiers' Bonus Act." That relief was asked on the ground that the act violated provisions of the State and Federal Constitutions and was therefore void. The respondents, in their answer to that petition, denied that the act was unconstitutional, but admitted that they intended to print upon the official ballots, to be used at the election in November, 1922, the proposition of its approval or disapproval, and to do all things provided by it in order to effect its purpose.

The court overruled a demurrer filed by the petitioner to that answer, and dismissed his petition, and from that order this appeal was taken.

The only question presented for the consideration of this Court, therefore, is the constitutionality *vel non* of chapter 448 of the Acts of 1922.

The purpose of that act is declared in the first section thereof in the following language: "That in order to promote the spirit of patriotism and loyalty, in testimony of the gratitude of the commonwealth and in recognition of the services of certain residents of Maryland to the full extent of the demand made upon them and their opportunity in the Army and Navy of the United States during the war with Germany, the payments hereinafter specified are hereby authorized"; and its subject as stated in its title is "to provide suitable recognition for those residents of Maryland who served in the Army and Navy of the United States during the war with Germany, to authorize the creation of a State

debt not to exceed $9,000,000 for this purpose and to provide for the levying of taxes for paying interest on said debt and for the redemption of said debt, and providing for a referendum thereon." It in effect provides for the payment to each resident of Maryland mustered into the federal service and who reported for active duty as a commissioned officer, enlisted man, field clerk or nurse in the army or navy of the United States during the war with Germany, and served therein for the period stated in the act, $10 a month for each month of service, and providing in certain cases for the payment of $30 per month to any person entitled to compensation under the act, who may desire to continue his education in any of the educational institutions of the State, whilst in regular attendance as a student at such institution, the total payments not to exceed $1,080. It creates a military service recognition board to carry out its provisions, and provides the machinery by which such compensation may be asked and granted, and it also provides for the issuance and sale by the State of bonds to the amount of $9,000,000 to meet the expenditures authorized by the act and for levying taxes to pay such bonds and the interest thereon. Finally it provides that it shall be, at the general election in 1922, submitted to the qualified voters of the State for their approval or rejection.

It is contended that the act is void because it violates the following provisions of the Maryland Constitution, that is to say, article 14, section 1, which prescribes the manner of amending the Constitution; article 3, section 34, which limits the extensions of the State's credit; article 3, section 59, which prohibits the establishment of any general pension system; article 3, section 29, which requires that the subject of every act shall be described in its title; article 3, section 40, which forbids the taking of private property for any other than a public purpose and then only upon the payment of "due" compensation; article 3, section 34, which requires the discharge of all debts of the State within fifteen

years from "the time of contracting" them. It is also charged that it violates certain provisions of the Federal Constitution, in that it confers special privileges upon a limited class of persons at the petitioner's expense and deprives him of his property without due process of law, and the last objection is that the Constitution of Maryland constitutes "a contract between said State of Maryland and the petitioner which the act violated."

Of these objections, all but three are free from difficulty and may be disposed of with brief comment. Those three however, are of a much more substantial and serious character and demand the most careful scrutiny and the most scrupulous consideration in justice both to the State and its people and to the beneficiaries of the act, to whom the State and its people in common with the other States of the Union and the people thereof are so deeply indebted.

Referendum. The first question which we will consider is not apparently referable to any of the objections named, but is clearly made in the appellant's brief and is assumed by the appellee to be raised by paragraph 10 A of the appellant's petition, and it is based upon the effect which those provisions of article 3 of the Constitution of Maryland, relating to the passage of legislation in that State, have upon that provision of the Soldiers' Bonus Act which submits it for approval or rejection to the qualified voters of the State. That proposition the appellant states in these words: "The General Assembly of Maryland is utterly wanting in authority to make the validity of a public general statute dependent upon approval by a majority of the voters of the State under a referendum."

That proposition has in various forms been a subject of judicial examination in the courts of the several states for many years, and while at the outset it involved a political rather than a legal question, nevertheless, because it has been passed upon so often by the appellate courts in so many of the states, it has become by virtue of the rule of *stare decisis*

essentially a legal question, and we can only consider its political aspect in so far as it will aid us in interpreting the meaning of the constitutional provisions bearing upon the question, in the light of the decisions of the courts of the several states which have dealt with the effect of similar provisions upon legislation, affecting the State as a whole, which submitted to the people of the entire State the question as to whether it should or should not become effective. The question has never been before this Court in the precise form in which it now occurs, but this Court, in disposing of other cases involving some phase of the right, which has been claimed by legislatures, of redelegating to the people the power of making laws, has necessarily established and stated principles which we must now regard as of paramount and controlling influence.

In dealing with the question, we will exclude from consideration all cases involving only the right of a legislature to refer to the people of a designated municipal or quasi municipal corporation, or to the people of a specified and described community, the question as to whether local legislation affecting only that locality shall become effective, because, while the power of the legislature to refer local legislation affecting it alone to the people of such a corporation or of some political sub-division of the State, or of some defined locality, cannot be questioned in this State (*Levering* v. *Supervisors of Elections,* 137 Md. 287), and is sustained by the weight of authority elsewhere (12 *C. J.* 857, notes 92 and 93), it is equally well settled that the reasons given in those decisions upon which they rest are not applicable to legislation affecting the whole state, 12 *C. J.* 841; 6 *R. C. L.* p. 166.

The reason usually given, in cases which support the right of the legislature to refer local legislation to the people of the localities affected, is the power which the legislature, the law making agency of the state, has over its "derivative creations," (*Oberholtzer on Referendum in America,* edi-

tion 1911), and which is unlimited except by the state and federal constitution. That reason however has no application to a statute which affects, not a creation of the state, but the entire state and every part thereof.

It has been said that this distinction is arbitrary and illogical, and rests more upon political expediency than upon sound legal principles. Nevertheless the final and complete answer to that position is that the question is no longer open, but has been finally settled by repeated decisions of this Court and by a preponderance of authority elsewhere, so great that we are constrained to accept it in connection with our own decisions as conclusive of the question.

Coming back to the main proposition, in our judgment, the Legislature had not the power to submit the act in question to the qualified voters of the State for their approval or disapproval, and we rest our conclusion upon two grounds, one, that the people of Maryland, having delegated to the Legislature of Maryland the power of making its laws, that body could not legally or validly redelegate the power and the authority thus conferred upon it to the people themselves; and two, that the people of the State, from whom the Legislature itself derives its powers, having prescribed in the Constitution of the State the manner in which its laws shall be enacted, it is not competent for the Legislature to prescribe any other or different way in which its laws may be enacted.

The state of the law in regard to the first proposition is clearly stated by Mr. Oberholtzer in his book on the Referendum in America (1911), page 208, in which he says: "As to the constitutionality or unconstitutionality of lawmaking by popular vote in and for the states, always excepting laws for counties, cities and local districts, there is today little difference of opinion. The general principle that a body acting under delegated authority cannot redelegate its powers to some other person or body, is a well settled point in American law. *Delegata potestas non potest delegari* is a

rule the virtue of which no one disputes." And this statement fairly reflects the views of the courts in the decisions to which he refers: "*Rice* v. *Foster*, 4 Harr. 476; *Parker* v. *Commonwealth*, 6 Barr (Penn.), 507; *Barto* v. *Himrod*, 4 Seld. (N. Y.) 483; *Thorne* v. *Cramer*, 15 Barb. (N. Y.) 112; *C. W. & Z. R. R. Co.* v. *Clinton County*, 1 O. S. 77; *Boyd* v. *Byrant*, 35 Ark. 69; *Upham* v. *Supervisors of Sutter County*, 8 Cal. 379; *Ex-Parte Wall*, 48 Cal. 279; *State* v. *Wilcox*, 42 Conn. 364; *Maize* v. *The State*, 4 Ind. 342; *Santo* v. *State*, 2 Iowa, 165; *Geebrick* v. *State*, 5 Iowa, 491; *State* v. *Weir*, 33 Iowa, 134; *Commonwealth* v. *Weller*, 14 Bush. (Ky.) 218; *Fell* v. *State*, 42 Md. 71; *People* v. *Collins*, 3 Mich. 343; *Alcorn* v. *Hamer*, 38 Miss. 652; *State* v. *Hayes*, 61 N. H. 264; *City of Paterson* v. *Society for Establishing Useful Manufactures*, 4 Zab. (N. J.) 385; *Morgan* v. *Monmouth Plank Road Co.*, 2 Dutch (N. J.) 99; *Bank of Chenango* v. *Brown*, 26 N. Y. 467; *Gordon* v. *State*, 46 O. S. 607; *State* v. *Swisher*, 17 Texas, 441."

CHIEF JUDGE RUGGLES, in the New York Court of Appeals, in one of the early cases dealing with this question (*Barto* v. *Himrod*, 4 Seld. 483), stated the rule and the reasons for it with convincing lucidity and force. The act with which the Court was dealing there, and which provided for the establishment of free schools in New York, contained this provision, which is a paraphrase of the act under consideration here: "The electors shall determine by ballot at the annual election to be held in November next whether the act shall or shall not become a law." In dealing with the effect of that provision upon the act the Court said: "The legislative power in this state is vested by the constitution in the senate and assembly (art. 3, sec. 1). The power of passing general statutes exists exclusively in the legislative bodies." * * * The exercise of this power by the people in other cases is not expressly and in terms prohibited by the constitution; but it is forbidden by necessary and unavoidable implication. The senate and assembly are the only

bodies of men clothed with the power of general legislation. They possess the entire power with the exception above stated. The people reserved no part of it to themselves excepting in regard to laws creating public debt; and can therefore exercise it in no other case. * * * The legislature had no power to make such submission nor had the people the power to bind each other by acting upon it. They voluntarily surrendered that power when they adopted the constitution. The government of this state is democratic; but it is a representative democracy, and in passing general laws the people act only through their representatives in the legislature. * * * It is not denied that a valid statute may be passed, to take effect upon the happening of some future event certain or uncertain. But such a statute when it comes from the hands of the legislature must be law *in presenti* to take effect *in futuro*. If the observations already made are correct, the act of 1849 was not such a statute. But if by the terms of the act it had been declared to be law from the time of its passage, to take effect in case it should receive a majority of votes in its favor, it would neverthelss have been invalid, because the result of the popular vote upon the expediency of the law is not such a future event, as the statute can be made to take effect upon, according to the meaning and intent of the constitution. The event or change of circumstances on which a law may be made to take effect, must be such as in the judgment of the legislature affects the question of the expediency of the law; an event on which the expediency of the law, in the judgment of the law makers, depends. On this question of expediency, the legislature must exercise its own judgment definitely and finally. When a law is made to take effect upon the happening of such an event, the legislature in effect declare the law inexpedient if the event should not happen; but expedient if it should happen. They appeal to no other man or men to judge for them in relation to its present or future expediency. They exercise that power themselves and then perform the duty which the con-

stitution imposes upon them. * * * The event on which the act was made to take effect was nothing else than the vote of the people on the identical question which the constitution makes it the duty of the legislature itself to decide. The legislature has no power to make a statute dependent on such a contingency, because it would be confiding to others that legislative discretion which they are bound to exercise themselves, and which they cannot delegate or commit to any other man or men to be exercised. They have no more authority to refer such a question to the whole people than to an individual. The people are sovereign, but their sovereignty must be exercised in the mode which they have pointed out in the constitution. All legislative power is derived from the people; but when the people adopted the constitution, they surrendered the power of making laws to the legislature, and imposed it upon that body as a duty."

This statement of the law is not only consistent with the history of our constitution and government, but is, we think, supported by the clear weight of authority. *Stanton* v. *Board of Supervisors,* 191 N. Y. 428; *Opinions of the Justices,* 160 Mass. 586; 23 *L. R. A.* note, page 113; 6 *R. C. L.* pages 164, 167; 12 *C. J.* 865, note 96. It is true that there are cases which hold that such a provision is valid, upon the ground that for the legislature to give to the voters of the entire state the right to determine whether a given act shall or shall not become a valid law is not a delegation of power, but is only the selection of a contingency upon the happening of which the act stands or falls. The most noteworthy of these cases are: *State* v. *Frear,* 142 Wisc. 320, 20 *Annot. Cas.* 633; *State* v. *Parker,* 26 Vt. 365.

It is universally agreed that the legislature cannot delegate its law making power and, in order to evade the force of that rule, courts which felt constrained to uphold such a referendum were driven to the necessity of supplying some formula which would at the same time recognize and approve the rule, and disapprove and neutralize it, and the "con-

tingency" theory was the result. We cannot follow that course. Desirable as it is to support and uphold the acts of the Legislature, we cannot do so at the expense of the Constitution of the State. Nor can we break old laws to make new ones. And it seems very clear that if the Legislature cannot delegate to the people the law making power which the people delegated to them, then it cannot pass a valid act which can only become a law in the event that the people of the State approve it.

Nor can we agree with the position taken by the appellees in their brief: "That there is nothing in the Maryland Constitution which states that the legislative power is vested solely in the Legislature." We passed upon that identical question in the case of *Bradshaw* v. *Lankford,* 73 Md. 430, where we said: "Now it can hardly be necessary to say that, by the Constitution of this State, the power to enact laws belongs to the General Assembly, composed of the Senate and the House of Delegates; and this being so, it is a well-settled principle of constitutional law, that the power thus delegated cannot be redelegated to the people themselves. Our government is a representative government, and to the members of the General Assembly the people have confided the power to pass such laws as they, in the exercise of their judgment, may deem best for the public interests; and they have no power to substitute the judgment of others in matters of legislation for the judgment of those to whom this sovereign trust has been committed," and to the same effect is *Levering* v. *Supervisors of Elections,* 137 Md. 288, in which, speaking through Judge Stockbridge, this Court said: "A number of cases have * * * held that it is beyond the power of the Legislature in the exercise of its law-making function to delegate that power to the people. Such a result is reached from the very form and frame work of our theory and system of government, under which the Legislature is a representative body for the purpose of making laws, and it discharges its duty in a representative, delegated capacity, and is with-

out power to delegate either to a portion or class of the community the exercise of the very power for which it was selected by the people." Nor, for reasons already stated, are these cases, which include the latest expression of this Court on the subject, in conflict with the decisions in such cases as *Fell* v. *State,* 42 Md. 71, which dealt with the power of the Legislature to refer a purely local act to the inhabitants of the locality affected for approval or rejection.

The second objection, which is that the Legislature cannot provide any method or manner of enacting laws other than that prescribed in the Constitution, is really a corollary of the first. Article 3 of the Constitution of Maryland contains these provisions relating to the passage of legislation:

"Section 1. The Legislature shall consist of two distinct branches—a Senate and a House of Delegates—and shall be styled the General Assembly of Maryland. * * * "

"Sec. 27. Any bill may originate in either house of the General Assembly, and be altered, amended or rejected by the other; but no bill shall originate in either house during the last ten days of the session, unless two-thirds of the members elected thereto shall so determine by yeas and nays; nor shall any bill become a law until it be read on three different days of the session in each house, unless two-thirds of the members elected to the house where such bill is pending shall so determine by yeas and nays; and no bill shall be read a third time until it shall have been actually engrossed for a third reading.

"Sec. 28. No bill shall become a law unless it be passed in each house by a majority of the whole number of members elected, and on its final passage the yeas and nays be recorded; nor shall any resolution requiring the action of both houses be passed except in the same manner.

"Sec. 29. The style of all laws of this State shall be, 'Be it enacted by the General Assembly of Maryland,' and all laws shall be passed by original bill; and

every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title; * * * .

"Sec. 30. Every bill, when passed by the General Assembly, and sealed with the Great Seal, shall be presented to the Governor, who, if he approves it, shall sign the same in the presence of the presiding officers and chief clerks of the Senate and House of Delegates. Every law shall be recorded in the office of the Court of Appeals, and in due time be printed, published and certified under the Great Seal, to the several courts, in the same manner as has been heretofore usual in this State."

And article 2, section 17, contains this provision:

"Every bill which shall have passed the House of Delegates and the Senate shall, before it becomes a law, be presented to the Governor of the State; if he approve he shall sign it, but if not he shall return it with his objections to the house in which it originated."

Taken together, these, and cognate provisions of that Constitution, confer upon the General Assembly of Maryland the exclusive power of making laws in that State, and upon the Governor certain veto powers in respect to such laws. They definitely and inevitably place the responsibility for the enactment of such laws upon each branch of the General Assembly and upon the Executive.

Under the system thus established, there are at least three distinct and several stages or steps in the history of every act of the Maryland Legislature, and, except where a bill is vetoed, only three steps—the passage of the bill by the House of Delegates, its passage by the Senate, and its approval by the Governor.

Or, stated in another way, under these provisions, every bill which has passed both Houses and has been approved by the Governor, becomes a law if it is otherwise valid.

Such is the necessary effect of these provisions. But in the act under consideration, the Legislature has added a new qualification or condition to the passage of legislation, in addition to and entirely *dehors* anything in the Constitution. That is, it provides that although the act under consideration has passed both Houses and has been signed by the Governor, it shall not become a law unless a majority of the qualified voters of the State approve it.

The effect of that provision is not in any way to amend the Constitution, but to violate it. It takes away all real responsibility for the legislation from the Legislature and the Governor, where it was placed by the Constitution, and places it upon an anonymous "majority of the qualified voters."

The Legislature is perhaps the most important department of the State's government. It possesses the most extensive and even plenary powers of law making, and is restrained and limited only by the State and Federal Constitutions. These powers and functions are of the most vital interest to the people, who are affected by everything which tends to impair its capacity to adequately discharge its duties and perform its functions under the Constitution. That capacity must bear a close and direct relation to the responsibility which is placed upon members of the Legislature by the Constitution for legislation enacted by them. When, therefore, the Legislature, instead of enacting legislation in accordance with its wisdom and experience, and with a just regard for its responsibility, merely initiates or proposes legislation, and refers all responsibility in connection with it to the people, it violates both the plain letter and the spirit of the Constitution.

It was contended that the act was complete when signed by the Governor and that the referendum was merely a "contingency," upon the happening of which the act was to take effect. That proposition or formula is but a device, a mere fiction, born of the necessity of supplying some reason for

recognizing and conceding the legal principles crystallized in the maxim *"delegata potestas non potest delegari"* (18 C. J. 471, note 92) and at the same time upholding an act which in terms violated them.

This act by its terms is not to become a law unless a majority of the voters approve it; otherwise it is to be void. Under the Constitution no act is to become a law unless it passes both Houses and is approved by the Governor or passed over his veto. How or in what way, then, does the legislative power given to the Legislature and the Governor differ from that given by this act to the people. The people are given expressly the power of determining whether the act shall or shall not be law. If that is not legislative power, what is it? There are cases which hold that such a power is not legislative in its character, but for reasons already given we are not prepared to adopt the principles or the reasoning of such cases, because we feel that they are fundamentally unsound and fallacious. We are therefore of the opinion that the referendum section of the act is in conflict with the Constitution of the State and therefore void.

The appellant also contends that the act violates the other provisions of the Constitution of Maryland to which we have referred. This case, however, is brought against the Supervisors of Election of Baltimore City, and the specific relief asked is that they be commanded not to print upon the ballots to be used at the election to be held in Baltimore City in November, 1922, the proposition of the approval or disapproval of the act now under consideration, and in as much as what we have said finally and conclusively disposes of that question, it becomes unnecessary to deal with the other constitutional questions raised by the appellant, notwithstanding the fact that many of them, and especially those relating to the 34th and 59th sections of article 3 of the Constitution of Maryland, are of the utmost importance to the State and the people thereof. Indeed they are of such importance that we feel they should not be dealt with at all

unless their determination is necessarily involved in the disposition of the case before us and, in as much as the first point raised necessarily disposes of the case before us, any discussion of the other objections would be largely superfluous.

For the reasons which we have given, we are reluctantly forced to the conclusion that chapter 448 of the Acts of 1922 is unconstitutional and void.

We are keenly conscious of the sacrifices which the soldiers, sailors and nurses from this State made in the great war, of the hardships they endured, of the high service they rendered, of the value of that service to the State and its people, and of their just claim to the grateful consideration of this State. It is unfortunate that this legislation through which the State attempted in some measure to recognize that claim must fall. But so long as we are entrusted with the administration of the law, we must be bound by the law. The people adopted the Constitution and the people alone can change it, and while it stands unchanged it is the supreme law binding and controlling this Court as well as every other department of the State's government and its people, and when changed conditions make it desirable to amend its provisions, the amendment must be made in accordance with and not in violation of its mandates.

The order appealed from will be reversed and the case remanded in order that the writ of mandamus may be issued in accordance with the prayer of the petition, with costs to the appellant.

> *Order reversed and case remanded in order*
> *that writ of mandamus may be isssued in*
> *accordance with the prayer of the petition,*
> *with costs to the appellant.*

STOCKBRIDGE, J., having read the briefs and record in the case, fully concurs in the foregoing opinion.