(No. 20841.—

THE PEOPLE *ex rel.* Charles M. Thomson, Petitioner, *vs.*
JOSEPH H. BARNETT *et al.* Respondents.

*Opinion filed April 30, 1931.*

HEARD, J., dissenting.

WALTER F. DODD, and WILLARD R. MATHENY, for petitioner.

ESTHER A. DUNSHEE, SANDERS, CHILDS, BOBB & WESCOTT, WILLIAM L. BOURLAND, and BERTHA C. CARLSON, for respondents.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

Upon leave given, a petition was filed at the April term by Charles M. Thomson, a resident, citizen and tax-payer of the county of Cook, praying for a writ of *mandamus* commanding the jury commissioners of the county of Cook to prepare the jury list and perform all duties in connection therewith and to place male persons, only, on such jury list. The respondents demurred to the petition, and the cause has been submitted on the petition, demurrer and briefs of the parties and their oral arguments.

The Fifty-sixth General Assembly passed a bill for an act to amend section 2 of "An act to authorize judges of courts of record to appoint jury commissioners and prescribing their powers and duties," approved June 15, 1887, as amended,. (Laws of 1929, p. 538,) and a bill for an act to amend sections 1 and 4 of "An act concerning jurors, and to repeal certain acts therein named," approved February 11, 1894. (Laws of 1929, p. 539.) These bills were approved by the Governor on June 14 and June 17, 1929, respectively. Each act contained this provision: "This act shall not be

in force unless the question of its adoption has been submitted to the legal voters of this State and approved by a majority of all the votes cast upon the proposition. Such question shall be submitted to such legal voters at the general election to be held on Tuesday next after the first Monday of November, A. D. 1930." Each act further provided that "if a majority of the legal voters of this State voting upon said proposition vote in favor of this act it shall thereby and thereupon be in force and effect in this State." Both acts were submitted at the election specified, and a majority of the votes cast on the proposition was in each case in favor of the act. The issue presented is the constitutionality of these two acts. The petitioner contends (1) that the General Assembly has no constitutional power to provide for jury service by women; (2) that the bills in question were attempted delegations of legislative power, contrary to established principles of law and to the limitations of the constitution. In view of the conclusion we have reached on the latter contention it will be unnecessary to consider the former.

The fundamental principle of our national government is the equality of rights of all citizens under the law. The unanimous declaration of the thirteen United States of America of their independence and of the dissolution of all connection between them and the State of Great Britain was founded upon the truths, which it stated to be self-evident, that all men are created equal; that they are endowed by their Creator with certain inalienable rights; that among them are life, liberty and the pursuit of happiness, and that to secure these rights governments are instituted among men, deriving their just powers from the consent of the governed. The reference is, of course, to the equality of natural rights under the law and not to any equality of conditions, abilities, intelligence, traits, qualities, characteristics and attributes, mental, moral, physical or material, which naturally differ in different individuals. Thirteen

years after this declaration, when the colonies made good their position as free and independent States, the people of the United States of America, represented by their delegates selected in the several States, ordained and established for the United States a constitution having for its foundation the principle that governments derive their just powers from the consent of the governed. The rights and powers of government are vested in the whole people, and the constitutions of all the States of the Union recognize the people as the source of all governmental power—not only all legislative power but all executive power and all judicial power. The first constitution of the State of Illinois was adopted by a convention of delegates at Kaskaskia, and article 8 contained the following declaration: "That the general, great and essential principles of liberty and free government may be recognized and unalterably established, we declare: (1) That all men are born equally free and independent, and have certain inherent and indefeasible rights: among which are those of enjoying and defending life and liberty, and of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Section 1 of article 2 provided: "The legislative authority of this State shall be vested in a General Assembly, which shall consist of a Senate and House of Representatives, both to be elected by the people." The first two sections of article 13 of the constitution of 1848 are the same as the first two sections of article 8 of the constitution of 1818, and section 1 of article 3 of the constitution of 1848 is the same as section 1 of article 2 of the constitution of 1818. In the constitution of 1870 the legislative power is vested in the General Assembly in the same words as in the two previous constitutions, and section 1 of article 2 is as follows: "All men are by nature free and independent, and have certain inherent and inalienable rights—among these are life, liberty and the pursuit of happiness. To secure these rights and the protection of property, governments

are instituted among men, deriving their just powers from the consent of the governed."

Thus all the legislative power inherent in the people of the State of Illinois has been vested in the General Assembly, except in those cases in which the power has by express limitation or necessary implication been withheld. Since it alone has the power the General Assembly has also the duty, and upon it alone rests the full responsibility, of legislation. This power it may not delegate to any other officers or persons or groups of persons, or even to the whole body of the people, or to a majority of the voters of the State voting at a general election or at a special election. The constitution has made no general provision for a referendum of any act of the General Assembly to a vote of the people of the whole State to determine whether or not that act shall become a law. By section 5 of article 11 of the constitution it is provided that no act of the General Assembly authorizing or creating corporations or associations with banking powers, nor amendments thereto, shall go into effect or in any manner be in force unless the same shall be submitted to a vote of the people at the general election next succeeding the passage of the same and be approved by a majority of all the votes cast at such election for or against such law. By the amendment of the constitution which became section 34 of article 4 of the constitution it was provided that no law based on that amendment affecting the municipal government of the city of Chicago should take effect until such law should be consented to by a majority of the legal voters of the city voting on the question at any election, general, municipal or special. In cases of this kind the General Assembly was not only permitted, but was required, to submit its action by a referendum to the people of the city or the State, and its acts in such cases could not go into effect or in any manner be in force until the required majority of voters had consented.

Independent of any written constitution John Locke wrote in 1689: "The legislature cannot transfer the power of making laws to any other hands, for, it being but a delegated power from the people, they who have it cannot pass it over to others. * * * Legislative action neither must, nor can, transfer the power of making laws to anybody else or place it anywhere but where the people have." (Two Treatises of Government, p. 276.) This is the general rule of constitutional law sustained by the weight of judicial decisions, though not without the exception of some cases which hold that the legislature may pass a general act making its becoming a law expressly dependent upon its approval by a majority of voters on a referendum to the people of the whole State. In this State it is held that to sustain an act whose constitutionality is drawn in question it must appear to have been complete when it came from the legislature. (*Arms* v. *Ayer,* 192 Ill. 601; *Sheldon* v. *Hoyne,* 261 id. 222.) Therefore the first Primary Election law was held invalid because, among other reasons, of the provision in section 6 that the county central committee of each party should determine whether the county officers should be nominated at the primary election by the voters or by delegates chosen at such election, and also whether the candidates should be nominated by a majority or plurality vote, thus delegating to county central committees legislative authority to determine what the substantial features of the law should be. (*People* v. *Election Comrs.* 221 Ill. 11.) For a like reason, among others, the second Primary Election law, which conferred on the county central committees of political parties power to designate and establish delegate districts and made the entire act dependent for its operation upon the action of such committees, was held unconstitutional and void in *Rouse* v. *Thompson,* 228 Ill. 522. A statute which is incomplete in declaring what constitutes a violation of its provisions but authorizes a public officer or an

administrative or executive board to determine that question is invalid as delegating legislative power to the officer or board. (*Sheldon* v. *Hoyne, supra; Board of Administration* v. *Miles,* 278 Ill. 174; *Kenyon* v. *Moore,* 287 id. 233; *Schaezlein* v. *Cabaniss,* 135 Cal. 466; *Hewitt* v. *State Board of Medical Examiners,* 148 id. 590.) The cases which have been cited are illustrations of the generally recognized rule of law that legislative power may not be delegated. In none of them was there a referendum to the people of the State, and therefore in none of them did the precise state of facts in this case exist.

· The exact question in this case was considered by the Supreme Court of Ohio in *Cincinnati, Wilmington and Zanesville Railroad Co.* v. *Clinton County,* 1 Ohio St. 77; by the New York Court of Appeals in *Barto* v. *Himrod,* 8 N. Y. 483, and *People* v. *Kennedy,* 207 id. 533; and by the Supreme Court of California in *Ex parte Wall,* 48 Cal. 313. The Supreme Court of Ohio said: "That the General Assembly cannot surrender any portion of the legislative authority with which it is invested or authorize its exercise by any other person or body is a proposition too clear for argument and is denied by no one. This inability arises no less from the general principle applicable to every delegated power requiring knowledge, discretion and rectitude in its exercise than from the positive provisions of the constitution itself. The people, in whom it resided, have voluntarily relinquished its exercise and have positively ordained that it shall be vested in the General Assembly. It can only be reclaimed by them by an amendment or abolition of the constitution, for which they, alone, are competent. To allow the General Assembly to cast it back upon them would be to subvert the constitution and change its distribution of powers without their action or consent. The checks, balances and safeguards of that instrument are intended no less for the protection and safety of the minority than the majority, hence while it continues in force every

citizen has a right to demand that his civil conduct shall only be regulated by the associated wisdom, intelligence and integrity of the whole representation of the State."

In *Barto* v. *Himrod, supra,* it appeared that the legislature had adopted an enactment entitled, "An act establishing free schools throughout the State," and had provided by one of the sections, "the electors shall determine by ballot, at the annual election to be held in November next, whether this act shall or shall not become a law." The enactment was State-wide in its effect and did not purport to be a law when it left the legislature but the question of its becoming a law was submitted to the electors. It was merely a legislative proposition for a statute to be passed on by the people, and it was held that this was an unconstitutional attempt by the legislature to delegate its powers, and that even if by the terms of the act it had been declared to be a law, to take effect in case it should receive a majority of the votes, it would nevertheless have been invalid, because the result of a popular vote upon the expediency of the law was not such a future event that a statute could be made to take effect upon it according to the meaning and intent of the constitution. In *People* v. *Kennedy, supra,* the same court stated: "The proposition that by our constitution general powers of legislation are conferred exclusively upon the legislature and that this body may not escape its duties and responsibilities by delegating such legislative powers to the people at large must be regarded as so thoroughly established that it needs no discussion." The court, referring to the case of *Barto* v. *Himrod, supra,* stated: "Starting with and fully accepting the elementary proposition involved in and decided by the *Barto case,* we find that subsequent decisions have declared that the doctrine of that case should not be pushed beyond the question there involved, and that the legislature may pass a statute which is a completed law, affecting or conferring rights upon a restricted locality but to become operative only

in the event of an affirmative vote by the people of such locality."

In *Ex parte Wall, supra,* the court said: "To say that the legislators may deem a law to be expedient provided the people shall deem it expedient is to suggest an abandonment of the legislative function by those to whose wisdom and patriotism the constitution has intrusted the prerogative of determining whether a law is or is not expedient. A statute passed to take effect upon a subsequent event, when it comes from the hands of the legislature, must be a law *in præsenti* to take effect *in futuro.* On the question of the expediency of the law the legislature must exercise its own judgment definitely and finally. If it can be made to take effect on the occurrence of an event, the legislature must declare the law expedient if the event shall happen but inexpedient if it shall not happen. They can appeal to no other man or men to judge for them in relation to its present or future propriety or necessity. They must exercise that power themselves and thus perform the duty imposed upon them by the constitution. But in case of a law drawn to take effect if it shall be approved by a popular vote no event affecting the expediency of the law is expected to happen. The expediency or wisdom of the law, abstractly considered, does not depend on a vote of the people. If it is unwise before the vote is taken it is equally unwise afterwards. The legislature has no more right to refer such a question to the whole people than to a single individual."

Where an enactment of the General Assembly, approved by the Governor, provided for its submission to a vote of the people as to whether it should become a law or not, it was held that this provision was void and the vote of the people pursuant thereto without legal effect, and that the enactment became a law when it passed the two houses and was approved by the Governor. *Santo* v. *State,* 2 Iowa, 165; *State* v. *Beneke,* 9 id. 203.

In *Opinions of the Justices,* 160 Mass. 586, the justices of the Supreme Judicial Court of Massachusetts were required to give their opinion to the House of Representatives upon the question, "Is it constitutional, in an act granting to women the right to vote in town and city elections, to provide that such act shall take effect throughout the commonwealth upon its acceptance by a majority vote of the voters of the whole commonwealth?" Five of the judges answered this question in the negative and two in the affirmative. Four of the judges who answered in the negative united in an opinion in which they used the following language: "It is true that a general law can be passed by the legislature to take effect upon the happening of a subsequent event. Whether this subsequent event can be the adoption of the law by a vote of the people has occasioned some differences of opinion, but the weight of authority is that a general law cannot be made to take effect in this manner. Whether such legislation is submitted to the people as a proposal for a law, to be voted upon by them and to become a law if they approve it, or as a law to take effect if they vote to approve it, the substance of the transaction is that the legislative department declines to take the responsibility of passing the law. But the law has force, if at all, in consequence of the votes of the people. They ultimately are the legislators. It seems to us that by the constitution the Senate and the House of Representatives have been made the legislative department of the government and that there has not been reserved to the people any direct part in legislation."

The cases of *Brawner* v. *Supervisor of Elections,* 141 Md. 586, and *State* v. *Hayes,* 61 N. H. 264, are other decisions that the people of the State having delegated to the legislature the power of making its laws, that body cannot re-delegate to the people themselves the power and authority thus conferred upon it, by making the validity of a statute affecting the whole State dependent upon a vote of the peo-

ple. In *Locke's Appeal*, 72 Pa. St. 508, it is said that if the legislature can delegate the law-making power to a majority of the voters it can also confer such power upon the minority; and in *Matter of the Borough of West Philadelphia*, 5 W. & S. (Pa.) 283, it was said: "Under a well-balanced constitution the legislature can no more delegate its proper function than can the judiciary."

An act of the legislature need not go into effect immediately on its passage, and, indeed, under the constitution it cannot take effect until the first day of July next after its passage, unless in case of emergency to be expressed in the act the General Assembly shall by a vote of two-thirds of all the members elected to each house otherwise direct. The legislature may direct when an act shall take effect, and it may direct that it shall take effect upon the happening of a certain contingency or future event, and the nature of the contingency or future event is immaterial if it is legal. A favorable vote of the people of the State is not, however, such a contingency or future event, as was held in *Barto v. Himrod, supra.*

While the cases of *Cincinnati, Wilmington and Zanesville Railroad Co.* v. *Clinton County, supra,* and *People* v. *Kennedy, supra,* hold as so thoroughly established as to need no discussion that general powers of legislation are conferred exclusively upon the legislature and that this body may not escape its duties and responsibilities by delegating such legislative powers to the people at large, it is equally well established that an act of the legislature is not unconstitutional because by its terms it is to take effect only after it shall have been approved by the vote of the people of the locality affected. In accordance with this latter principle the courts in the two cases mentioned, while sustaining the general principle that legislative power cannot be delegated, also upheld the legislation in question in those cases, which in each case only affected a single county in the State. It is not regarded that the rule against the delegation of legis-

lative power is violated by vesting municipal corporations with certain powers of legislation on subjects of purely local concern connected with their municipal affairs. Laws of a general nature which may be thought desirable by the inhabitants of certain localities within the State but undesirable by the inhabitants of other localities, sometimes known as "local option" laws, depend for their execution and enforcement upon the votes of some portion of the people and yet are not regarded as delegations of legislative power. (*City of Chicago* v. *Stratton,* 162 Ill. 494; *Chicago Terminal Railroad Co.* v. *Greer,* 223 id. 104; *Banta* v. *City of Chicago,* 172 id. 204.) Delegation of power to make the law is forbidden as necessarily involving discretion as to what the law shall be, but there can be no valid objection to a law which confers an authority or discretion as to its execution, to be exercised under and in pursuance of the law itself. "The true distinction * * * is this: The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend." (*Locke's Appeal, supra.*) Examples of laws of this character enacted by the General Assembly but made dependent for their execution on a vote of the people of the locality to be affected are: An act to divide the county of Gallatin and form out of the same the county of Saline—*People* v. *Reynolds,* 5 Gilm. 1; the act for locating and maintaining the South Park in the city of Chicago—*People* v. *Salomon,* 51 Ill. 37; the City Election law—*People* v. *Hoffman,* 116 Ill. 587; an act concerning land titles, the Torrens law—*People* v. *Simon,* 176 Ill. 165; Commission Form of Government act—*People* v. *Edmands,* 252 Ill. 108; the Local Option law of 1907—*People* v. *McBride,* 234 Ill. 146.

The principle has long been recognized and is repeatedly announced in our decisions as well as in those of other courts, that while the legislature cannot delegate its gen-

eral legislative authority, "still it may authorize many things to be done by others which it might properly do itself. * * * Necessarily, regarding many things, especially affecting local or individual interests, the legislature may act either mediately or immediately. We see, then, that while the legislature may not divest itself of its proper functions or delegate its general legislative authority, it may still authorize others to do those things which it might properly yet can not understandingly or advantageously do itself. Without this power legislation would become oppressive and yet imbecile. Local laws almost universally call into action, to a greater or less extent, the agency and discretion, either of the people or individuals, to accomplish in detail what is authorized or required in general terms. The object to be accomplished or the thing permitted may be specified and the rest left to the agency of others with better opportunities of accomplishing the object or doing the thing understandingly." (*People* v. *Reynolds, supra.*) "The true distinction is between a delegation of power to make the law, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no objection can be made." (Sutherland on Stat. Const. sec. 68.)

The respondents contend that the act to amend the Jury Commissioners act in question here was complete when it came from the legislature, and became a law on June 14, 1929, when it was signed by the Governor. Their counsel say in their brief that the question whether the act should become a law was not submitted to the people, and that it could not be under the constitution of this State. After June 14, 1929, counsel say, it was not possible to submit the question whether the act should become a law to the people for it was already a law, but the existence and taking effect of the law being two separate things it was possible to take a vote as to the time when it should be set in operation;

and that, it is further said, is precisely what was done under section 2 of the act. This position is taken in view of the language of section 16 of article 5 of the constitution, which requires every bill passed by the General Assembly, before it becomes a law, to be presented to the Governor, and provides that if he approves he shall sign it, and it shall thereupon become a law. This seems to be little more than a mere quibble about words—an evasion of the question. "It is the substance and not the mere form given to the enactment which must determine its constitutionality." (*People* v. *Cooper*, 83 Ill. 585.) When the Governor signed the bill, what became a law? Certainly, if anything became a law it was the bill as written, no part of it to be disregarded and the whole to be construed together, giving to the language used its ordinary meaning. No person reading this amendatory act could for a moment have the slightest doubt that the legislature never intended this act to have any force or effect whatever unless the question of its going into effect should have been submitted to the legal voters of the State and should have been approved by a majority of all the votes cast upon the proposition. What proposition? Manifestly, no voter would imagine he was casting a vote as to when the act should go into effect, but everyone would know he was voting to put it into effect at once or not to put it into effect at all. He knew he was voting for or against the adoption of the act and for or against putting it in force, and he was advised by the last sentence of the act that if a majority of the legal voters of the State voting on the proposition voted in favor of the act, it would thereby—that is, by such majority vote—and thereupon— that is, without further action or delay—be in force and effect throughout the State, and if the proposition was not approved by the majority of the votes cast on it the act should not be in force and effect in the State. This was the act which the Governor signed, and if anything became a law by his signature it was this act proposing an act to the

people of the State to be voted upon and accepted or approved by them or rejected and disapproved. We cannot attribute to the General Assembly or the Governor an intention to go through the farce of submitting to a vote of the people the question whether women shall serve on juries or not, when the vote could not affect the question. The meaning of the maxim that the law must be complete when it comes from the legislature is, that the rights, duties, privileges or obligations granted or imposed must be definitely fixed or determined, or the rules by which they are to be fixed and determined must be clearly and definitely established when the act is passed by the two houses of the General Assembly and approved by the Governor. *People* v. *Reynolds, supra.*

The two parts of the act, the one providing for a jury list of electors of both sexes and the other providing for the submission of the proposition to the voters, cannot be separated and the former held good and the latter invalid, as was done by the Supreme Court of Iowa in *Santo* v. *State, supra,* and *State* v. *Beneke, supra.* The General Assembly did not pass a law declaring that women should be jurors. It abdicated its authority for the time being and passed the responsibility on to the people. It made an effort to accomplish a single purpose in a particular way, and the way having been found inadequate and unconstitutional the court has no right to disregard the condition annexed to the act and declare the act valid in spite of the failure of the condition. There is no reason to suppose the General Assembly would have passed the bill with the provision for a referendum omitted.

We hold that under the constitution of Illinois the General Assembly is the sole depository of the legislative power of the State; that it has no power to delegate its general legislative power, and may not refer a general act of legislation to a vote of the people of the State to decide whether it shall have effect as a law except where the constitution

requires such reference; that the rule against the delegation of legislative power is not violated by vesting in municipal corporations certain powers of legislation on subjects of purely local concern connected with their municipal affairs, nor by local option laws the application of which to particular localities is made dependent upon their adoption by the voters of such localities, and that the act of June 14, 1929, to amend section 2 of an act to authorize judges of courts of record to appoint jury commissioners and prescribing their powers and duties, is an unconstitutional delegation of legislative powers and had no effect to change the Jury Commissioners act or to authorize the selection of women as jurors.

The writ of *mandamus* will issue as prayed.

*Writ awarded.*

Mr. JUSTICE HEARD, dissenting.