Request of the Senate
No. 99-086

OPINION OF THE JUSTICES
(Tax Plan Referendum)

March 11, 1999

430

The following Resolution No. 1, requesting an opinion of the justices, was adopted by the Senate on February 11, 1999, and filed with the supreme court that day:

"Whereas, Senate Bill 51-FN-A-LOCAL, 'An act establishing a referendum for a new taxation plan to fund public education,' is presently pending in the senate; and

"Whereas, Part I, Article 28 of the Constitution of New Hampshire states: 'No subsidy, charge, tax, impost, or duty, shall be established, fixed, or levied, under any pretext whatsoever, without the *consent of the people, or their representatives* in the legislature, or authority derived from that body,' N.H. CONST. pt. I, art. 28 (emphasis added); and

"Whereas, in *Claremont School District v. Governor*, 142 N.H. 462 (1997) (*Claremont II*), the New Hampshire Supreme Court held that the current school tax as presently structured is disproportionate and unreasonable in violation of the Constitution of New Hampshire; and

"Whereas, the decision in *Claremont II* necessitates a major change in the tax structure of the state of New Hampshire that will have a substantial impact on the people of New Hampshire; and

"Whereas, Senate Bill 51-FN-A-LOCAL establishes a procedure whereby the legislature may submit a question regarding the imposition of statewide taxes for the funding of a constitutionally adequate education to the vote of the people by ballot and would allow the New Hampshire people to choose among tax plans enacted by the legislature; and

"Whereas, that portion of Part I, Article 28 stating 'without the consent of the people, or their representatives' appears to reserve a right for the people of New Hampshire to consent to taxation, and

that this right is distinct from and in addition to the authority of the legislature to establish taxes; and

"Whereas, Part II, Articles 2 and 5 of the Constitution of New Hampshire generally vest the power and authority to enact laws in the New Hampshire Senate and House of Representatives; and

"Whereas, a public hearing has been held before the senate committee on public affairs on SB 51-FN-A-LOCAL, and a question has been raised as to whether a referendum to secure the consent of the people as to a tax plan enacted by the legislature, offered under the apparent right vested in the people in Part I, Article 28, is precluded by the power and authority vested in the legislature under Part II, Articles 2 and 5; and

"Whereas, SB 51-FN-A-LOCAL raises an important question of law awaiting further consideration and action in the New Hampshire Senate; now, therefore, be it

"Resolved by the Senate:

"That the Justices of the Supreme Court be respectfully requested to give their opinion as expeditiously as possible on the following questions of law:

1. Would the process contained in SB 51-FN-A-LOCAL, providing for a referendum enabling the New Hampshire people to choose a tax plan enacted by the legislature to fund a constitutionally adequate public education, based on the authority and right of Part I, Article 28, be in any way repugnant or contrary to the Constitution of New Hampshire?

2. Would the process contained in SB 51-FN-A-LOCAL, providing for a referendum enabling the New Hampshire people to choose a tax plan enacted by the legislature to fund a constitutionally adequate public education be an unconstitutional delegation of legislative authority that is repugnant or contrary to the Constitution of New Hampshire?

"That the clerk of the senate transmit copies of this resolution and SB 51-FN-A-LOCAL, as introduced, to the Justices of the New Hampshire Supreme Court."

The following response is respectfully returned:

*To the Honorable Senate:*

The undersigned justices of the supreme court now submit the following replies to your questions of February 11, 1999. Following our receipt of your questions, we invited interested parties to file memoranda with the court on or before March 1, 1999.

SB 51-FN-A-LOCAL (the bill) contains a preamble declaring:

1 Findings and Purpose. The general court finds that:

I. In light of the New Hampshire Supreme Court's holding that providing an adequate education is a duty of state government expressly created by the New Hampshire constitution and its finding that the current property tax system is unconstitutional for funding public education and may not be collected after March 31, 1999, it is necessary for the general court to enact a new and constitutional taxation plan to fund public education.

II. A new taxation plan to fund public education may take the form of a tax assessed throughout the entire state, payable by all citizens, all income-earners, or all property owners.

III. The general court has been granted general power to enact all manner of wholesome and reasonable laws by the constitution, but this general power is limited by specific provisions of the constitution. Among the limitations on legislative authority is the power to tax in a manner that is other than proportional and reasonable. *See, e.g., Opinion of the Justices*, 4 N.H. 565, 567 (1829).

IV. The power of taxation is an attribute of sovereignty inherent in the people. *See State v. Express Co.*, 60 N.H. 219, 236 (1880) (Stanley, J.); *Mack v. Jones*, 21 N.H. 393, 395 (1850); *see also Brewster v. Hough*, 10 N.H. 138, 143 (1839).

V. By its express terms, the New Hampshire constitution provides that "No subsidy, charge, tax, impost, or duty, shall be established, fixed, laid, or levied, under any pretext whatsoever, without the consent of the people, or their representatives in the legislature, or authority derived from that body." Pt. 1, Art. 28. This provision should be construed to authorize the legislature to seek the consent of the people, through a binding referendum, for a newly established tax.

VI. The general court should not attempt to avoid its responsibility for enacting wholesome and reasonable laws. Therefore, the consent of the people should be sought only after the general court has determined that more than one new form of taxation is consistent with constitutional authority and limitations and in pursuit of the public good. The consent of the people would therefore be to one of 2 constitutionally permissible plans of taxation. The binding

referendum should be used only for approval of the imposition of constitutionally enacted taxation, and not as a mechanism to defer or re-delegate the legislative authority delegated from the people to the general court by the constitution.

The bill proposes to amend RSA chapter 663 (1996) by inserting after section 8 a new subdivision to read:

2 New Subdivision; Imposition of Statewide Taxes for Funding of Constitutionally Adequate Education. Amend RSA 663 by inserting after section 8 the following new subdivision:

Imposition of Statewide Taxes for Funding of Constitutionally Adequate Education

663:9 Question.

I. The legislature may, by general law, submit a question regarding the imposition of statewide taxes for funding of constitutionally adequate education to the vote of the people by ballot. The question shall be printed on the ballot to be used at the state general election next following enactment by the legislature, or at a special referendum called by the legislature for the purpose of voting on the question which shall be held in a manner and at a time determined by the legislature.

II. The legislature may submit a question pursuant to paragraph I only upon enacting into law 2 different tax plans for funding of constitutionally adequate education in the same session. One such tax plan shall be designated the "statutory plan" and the other shall be designated the "ballot option plan."

III. The secretary of state shall prepare and distribute a voter's guide providing details and analysis of the 2 tax plans that is reasonably balanced in its presentation. A committee of 6 legislators shall assist the secretary of state in preparing the voter's guide. The committee shall consist of 3 senators appointed by the senate president and 3 representatives appointed by the speaker of the house of representatives; the appointments shall include at least one member of the minority party from each body and at least one proponent of each plan.

IV. The question on the ballot shall be: "Shall the ballot option plan described below be levied for the funding of

constitutionally adequate education instead of the statutory plan described below?" Following the question shall be printed: "The (description of statutory plan) has been designated the 'statutory plan.' The (description of statutory plan) shall be levied beginning (effective date of statutory plan) unless a majority of voters vote in favor of the ballot option plan by marking 'yes' below." Following this statement shall be printed the following: "a detailed description of the tax plans is available in the voter's guide at your polling place." The question shall be printed again, followed by 2 squares, one with the word "yes" beside it and another with the word "no" beside it. If no cross or mark is made in either of the squares, or if a mark is made in both of the squares, then the ballot shall not be counted on the question.

663:10 Results.

I. If a majority of those voting on the question vote for the ballot option plan, the ballot option plan shall be enforced instead of the statutory plan. If a majority do not vote for the ballot option plan, the statutory plan shall be enforced.

II. The secretary of state shall certify the results to the legislature.

663:11 Recount. Upon receipt of petitions of 500 voters made no later than the second Friday following the date of the election, the secretary of state shall recount the ballots cast on the question regarding the imposition of statewide taxes for funding of constitutionally adequate education if the question was approved or failed by no more than one percent of the vote cast. The recount shall take place at any suitable state facility in the city of Concord as may be designated by the secretary of state and under such rules of procedure as the secretary of state shall determine and at such time as the secretary of state may appoint.

Your first question asks, "Would the process contained in [the bill], providing for a referendum enabling the New Hampshire people to choose a tax plan enacted by the legislature to fund a constitutionally adequate public education, based on the authority and right of Part I, Article 28, be in any way repugnant or contrary to the Constitution of New Hampshire?" We answer in the affirmative.

Part I, Article 28 provides that "[n]o subsidy, charge, tax, impost, or duty, shall be established, fixed, or levied, under any pretext whatsoever, without the consent of the people, or their representatives in the legislature, or authority derived from that body." The resolution states that "that portion of Part I, Article 28 stating 'without the consent of the people, or their representatives' appears to reserve a right for the people of New Hampshire to consent to taxation, and that this right is distinct from and in addition to the authority of the legislature to establish taxes." As explained below, however, both case law and historical evidence lead us to conclude that Part I, Article 28 does not reserve a right in the people of this State to consent by binding referendum to the establishment and levy of general taxes.

The State Constitution provides that "[t]he supreme legislative power, within this state, shall be vested in the senate and house of representatives, each of which shall have a negative on the other." N.H. CONST. pt. II, art. 2. "And further, full power and authority are hereby given and granted to said general court, from time to time, to make, ordain, and establish, all manner of wholesome and reasonable ... laws ... and to impose and levy proportional and reasonable assessments, rates, and taxes, upon all the inhabitants of, and residents within, the said state." N.H. CONST. pt. II, art. 5. "The power of taxation is an attribute of sovereignty belonging to the people; and this power, so far as it has been granted at all, has been delegated under our constitution to the legislature. Bill of Rights, article 28." *Mack v. Jones*, 21 N.H. 393, 395 (1850); *see Hampton v. Marvin*, 105 N.H. 34, 36, 193 A.2d 441, 443 (1963); *Morrison v. Manchester*, 58 N.H. 538, 549 (1879).

These provisions of our State Constitution establish the balance of power between the people of New Hampshire as sovereigns and the legislature's authority to levy taxes. As the court explained in 1880,

> [w]hile the convention which framed and the people who adopted the constitution recognized the absolute necessity of taxation for the support and defence of the government, and in broad and comprehensive terms conferred the power on the legislature to dispose of the sums raised, they did not forget that the power to tax was a delicate and difficult one; that it was always regarded with jealousy by those on whom it was to be exercised; and it was therefore declared in the bill of rights (article 28), "that no subsidy, charge, tax, impost, or duty shall be established, fixed, laid, or levied, under any pretext whatsoever, without the consent of the

people, or their representatives in the legislature, or authority derived from that body." *This power, inherent in the people, was by them delegated to the general court, subject to the condition that all taxes imposed should be proportional and reasonable upon all the inhabitants of and residents within the state, and upon all the estates within the same.* While they granted the power in general terms, they qualified the manner of its execution, and determined the subjects upon which it should operate.... This was a restraint upon the power of the legislature to impose the taxes.

*State v. Express Co.*, 60 N.H. 219, 236 (1880) (Stanley, J.) (emphasis added). Thus, the court interpreted Part I, Article 28 as an express delegation of the taxing power from the people to the legislature. In order to place restrictions on the taxing power, the constitution restrained the legislature's authority by requiring that taxes be reasonable and proportional. N.H. CONST. pt. II, art. 5.

Referenda on legislation are unconstitutional in this State. *Cf. State v. Hayes*, 61 N.H. 264, 315-16 (1881). In *Hayes*, the court considered the constitutionality of a statute regarding the elections of directors of corporations which provided that "the sense of the voters of the state shall be taken" and that the law would or would not go into effect and become a law according to the result of such popular vote. *Id.* at 264. The court distinguished between direct legislation by the people on matters affecting local municipalities — clearly permitted by the constitution — and legislation of a general character affecting the whole State — statutes that only the legislature can enact. "The government organized by the constitution was considered to be, as it undoubtedly is, that of a representative republic, and no power existed in the legislature to convert it, on any occasion, or for any purpose, into a pure democracy." *Id.* at 328.

"Legislative power can be delegated to towns only in local affairs." *Bowles v. Landaff*, 59 N.H. 164, 192. "By the constitution, legislative power is vested not in the towns, but in the senate and house of representatives. And without a well established ground of exception, the senate and house are as incapable of delegating their legislative power, as the governor and council are of delegating the power of pardon, or the court of delegating the power of deciding the constitutional question raised in these cases. All power is derived from the people, and all magistrates and officers of

government are their agents, and at all times accountable to them. Bill of Rights, art. 8. And these agents have not a general authority to avoid their official responsibility by relegating their duties to their assignees. If the legislative seats were filled with substitutes, it would not be claimed that a bill passed by them was law. The vote of a body of substitutes, assembled in the state-house or elsewhere, is not legislation, unless authorized by a legal construction of the constitution...." *Gould v. Raymond*, 59 N.H. 260, 276.

*Hayes*, 61 N.H. at 329 (ellipses omitted).

An exception to the rule in this State that referenda are unconstitutional is the existence of a constitutional provision expressly permitting such delegation. *See id.* at 325. Proponents of the bill argue that the rule in *Hayes* does not apply to the taxing power because the plain language of Part I, Article 28 permits "the consent of the people." This argument is problematic, however, because Part I, Article 28 is not the only constitutional provision to refer to the consent of the people. Most significantly, Part I, Article 12 states that "no part of a man's property shall be taken from him, or applied to public uses, without his own consent, or that of the representative body of the people" and that "[n]or are the inhabitants of this state controllable by *any other laws* than those to which they, or their representative body, have given their consent." N.H. CONST. pt. I, art. 12 (emphasis added). Thus, under the construction of Part I, Article 28 that we are urged to accept, *any* law could be submitted by the legislature to a vote of the people. This is a result clearly prohibited under our case law, *Hayes*, 61 N.H. at 325-26. *Cf.* N.H. CONST. pt. I, art. 1 ("all government of right originates from the people, is founded in consent, and instituted for the general good").

■ The Massachusetts Constitution contains a virtually identical provision to Part I, Article 28. *See* MASS. CONST. pt. I, art. 23 ("[n]o subsidy, charge, tax, impost, or duties, ought to be established, fixed, laid, or levied, under any pretext whatsoever, without the consent of the people or their representatives in the legislature"). Because much of the New Hampshire Constitution was taken from the Massachusetts Constitution, *Express Co.*, 60 N.H. at 239 (Stanley, J.), this court gives weight to interpretations of relevant portions of the Massachusetts Constitution when interpreting similar New Hampshire provisions. *See Warburton v. Thomas*, 136 N.H. 383, 392, 616 A.2d 495, 500 (1992).

The Massachusetts Supreme Judicial Court similarly interpreted Part I, Article 23 as a complete delegation of taxing authority from the people to the legislature. The court concluded that

> by the constitution the right to impose and levy taxes is vested in the legislature in very broad and comprehensive terms. The framers of that instrument were not unmindful of the necessity of providing that the government which they were about to establish should possess, within the sphere in which it was designed to operate, those powers which are essential to sovereignty, and to vigorous and efficient action. They were also well aware, by the experience through which they had passed, that the power of imposing taxes, though inherent and necessary as a means of supporting and carrying on a government, was a difficult and delicate one, always regarded with jealousy by those on whom it is to be exercised, and concerning which there should be clear and explicit provisions in the frame of government, in order that there should be no doubt or dispute, either as to the existence of the power or as to those to whom the authority to use it was delegated. It was therefore deemed important to declare, among the fundamental principles on which the government was to be based, that "no subsidy, charge, tax, impost, or duties ought to be established, fixed, laid, or levied, under any pretext whatsoever, without the consent of the people or their representatives in the legislature." Declaration of Rights, art. 23.

*City of Lowell v. Oliver*, 90 Mass. (8 Allen) 247, 252 (1864).

In addition, in 1894, the Massachusetts Supreme Judicial Court issued an advisory opinion in response to a request from the legislature whether it would be constitutional for the legislature to pass a law granting women the right to vote provided that "such an act shall take effect throughout the commonwealth upon its acceptance by a majority of the voters of the whole commonwealth." *In re Municipal Suffrage To Women*, 36 N.E. 488, 488 (Mass. 1894). After reviewing the provisions of the Massachusetts Constitution, the court stated:

> [T]here is nothing in any part of the constitution which tends to show that the people desired that any law should ever be submitted to them for approval or rejection.... Apparently, it was thought that the persons selected for the executive, legislative, and judicial offices, in the manner

prescribed in the constitution, would be men of good character and intelligence, of some experience in affairs, and of some independence of judgment, and would have a better opportunity of obtaining information, taking part in discussion, and carefully considering conflicting opinions, than the people themselves; and the people therefore put the responsibility of carrying on the government upon their representatives.

*Id.* at 489. Subsequently, the Massachusetts Constitution was amended to provide for initiative and referendum. *See* Massachusetts Constitution, Amendment XLII (1913) (superseded 1918) and Amendment XLVIII (1918).

Finally, we find significance in the debates of the 1912 and 1918-1921 constitutional conventions in New Hampshire. At each convention, the delegates reviewed resolutions proposing to amend the State Constitution to allow for referendum votes on certain bills introduced in the legislature. *See* JOURNAL OF THE CONVENTION TO REVISE THE CONSTITUTION 28-31 (1912) (JOURNAL OF 1912); JOURNAL OF THE CONVENTION TO REVISE THE CONSTITUTION 109-12 (1918) (JOURNAL OF 1918). After lengthy debate, *see* JOURNAL OF 1912, *supra* at 152-99; JOURNAL OF THE CONVENTION TO REVISE THE CONSTITUTION 307-30 (1920) (JOURNAL OF 1920), the resolution was rejected in 1912, *see* JOURNAL OF 1912, *supra* at 199, while the delegates at the later convention voted to indefinitely postpone action on the resolution. *See* JOURNAL OF 1920, *supra* at 330-32.

Each resolution was extensively debated, and it is readily apparent that the delegates to the early twentieth century constitutional conventions understood that the legislature simply lacked the constitutional power to submit a proposal to the electorate for approval. Some of the delegates argued that the referendum proposal was unnecessary because of the highly representative nature of the legislature, *see, e.g.*, JOURNAL OF 1920, *supra* at 307-09; JOURNAL OF 1912, *supra* at 175, and that adoption of the referendum would "take away the responsibility of members of the Legislature." JOURNAL OF 1920, *supra* at 307; *cf.* JOURNAL OF 1912, *supra* at 160.

The delegate to the 1912 convention who introduced the referendum resolution stated that the purpose behind the resolution was to ensure that the citizenry have "control" over their representatives "at all times," and under the constitution then in effect "we only have control of them once in two years when they come up for

re-election. In the meantime they are subject only to our advice, and we have no way of making them accept the advice of the people." JOURNAL OF 1912, *supra* at 153-54. That same delegate later stated that "[t]he people of New Hampshire *should* have a reserved opportunity to accept or reject the plans of government which are submitted to them by the legislature." *Id.* at 157 (emphasis added). Obviously, he understood that under our constitution, the citizens did not reserve any legislative power. *Cf. id.* at 164, 187 (recognizing that referendum is a change from the original constitution).

Given the democratic nature of town government that has existed in this State from the time the New Hampshire Constitution was adopted, it is reasonable to conclude that it was intended that matters of local legislation and regulation, as enumerated by the legislature, continue to be put directly before the voters of the locality, while State matters be entrusted to the elected representatives in the legislature. *Cf. Hayes*, 61 N.H. at 315-16 (recognizing that the "custom" of local control of powers conferred by the legislature was tacitly incorporated into "several state constitutions"); *cf.* IX NEW HAMPSHIRE TOWN PAPERS (1638-1784) 411-12 (1875) (petition to provincial government for incorporation of "New Hopkinton"). "The New England town affords, perhaps, an example of as pure a democracy as anywhere exists. All of the qualified inhabitants meet, and directly act upon and manage, or direct the management of, their own local concerns. This form of government was adopted at a very early period, and is firmly adhered to and deeply cherished by the people of the New England states." *Hayes*, 61 N.H. at 319 (quotation omitted); *see DeRochemont v. Holden*, 99 N.H. 80, 82, 105 A.2d 43, 45 (1954) (powers of town reside in its inhabitants since town government is democratic and not representative in form). Our entire system of local government relies on the distinction that "while general statutes must be enacted by the legislature, it is plain the power to make local regulations ... may be committed ... to the people of those districts themselves." *Hayes*, 61 N.H. at 328. Therefore, it is entirely consistent with the history of the establishment of our State and formation of our constitution that the enumerated local taxing powers were to be exercised through consent of the people while matters concerning State taxation were delegated to their representatives.

■ We are unable to conclude that the phrase, "the consent of the people" in Part I, Article 28 was intended to establish a right in the people of this State to directly vote on general tax legislation. To the contrary, the weight of case law and other history leads us to

conclude that Part I, Article 28 has never been understood as a reservation or exemption from the supreme legislative power granted to the legislature by Part II, Article 2. That the framers of our constitution knew how to employ language providing for a direct vote of the people on an issue of state-wide concern is evidenced by the provision for constitutional amendment. *See* N.H. CONST. pt. II, art. 100. The Constitution of 1784 provided that "no alteration shall be made in this constitution before the same shall be laid before the towns and unincorporated places, and approved by two thirds of the qualified voters present, and voting upon the question." IX NEW HAMPSHIRE TOWN PAPERS (1638-1784), *supra* at 918.

Your second question asks, "Would the process contained in [the bill], providing for a referendum enabling the New Hampshire people to choose a tax plan enacted by the legislature to fund a constitutionally adequate public education be an unconstitutional delegation of legislative authority that is repugnant or contrary to the Constitution of New Hampshire?" We answer in the affirmative.

The bill establishes a process under which the voters are asked to choose by ballot which of two different tax plans adopted by the legislature to fund a constitutionally adequate education should become law. The bill's statement of findings and purpose provides: "The binding referendum should be used only for approval of the imposition of constitutionally enacted taxation, and not as a mechanism to defer or re-delegate the legislative authority delegated from the people to the general court by the constitution."

> As to the constitutionality or unconstitutionality of lawmaking by popular vote in and for the states, always excepting laws for counties, cities, and local districts, there is to-day little difference of opinion. The general principle that a body acting under delegated authority cannot redelegate its powers to some other person or body is a well-settled point in American law.

*Brawner v. Curran*, 119 A. 250, 252 (Md. 1922) (quotation omitted) (citing *State v. Hayes*, 61 N.H. 264, as supporting this principle).

Two broad rules of law apply in determining whether, and under what circumstances, the legislature has the authority to delegate its legislative powers to the voters. The first is that the legislature is prohibited from abdicating its legislative power. The second is that the legislature may enact laws to take effect on a future event. *See Akin v. Director of Revenue*, 934 S.W.2d 295, 299 (Mo. 1996).

The first rule is rooted both in the philosophy of John Locke — because the power to legislate is a delegated power from the people,

the legislature has no power to delegate it to anyone else, *see People v. Barnett*, 176 N.E. 108, 110 (Ill. 1931) — and in the separation of powers doctrine — the power to legislate is an exclusive power granted to the legislature, *see Pursley v. City of Ft. Meyers*, 100 So. 366, 367 (Fla. 1924). "[W]hile the Legislature may not divest itself of its proper functions, or delegate its general legislative authority, it may still authorize others to do those things which it might properly, yet cannot understandingly or advantageously do itself." *Barnett*, 176 N.E. at 113.

> The true distinction is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made.

*Loving v. United States*, 517 U.S. 748, 758-59 (1996) (quotation and ellipsis omitted); *see State v. Normand*, 76 N.H. 541, 546, 85 A. 899, 901-02 (1913) (while legislature may not delegate the power to make the law, it may confer authority or discretion as to its execution); *Ferretti v. Jackson*, 88 N.H. 296, 298, 188 A. 474, 476 (1936) (constitution permits legislature to empower executive department to enact legislation of a subordinate nature to a general law). Enacting a law to become effective only upon the approval of the voters is an unconstitutional delegation to make the law. *See Akin*, 934 S.W.2d at 299 (delegation of general power to enact a general tax for education is unconstitutional); *Board of Public Works v. Baltimore County*, 421 A.2d 588, 589-90 (Md. 1980) (act authorizing the expenditure of state funds upon popular approval by county voters of matching funds found unconstitutional); *Brawner*, 119 A. at 251-53; *Barnett*, 176 N.E. at 113-14.

An exception to this rule exists for localities. Legislatures may "permit the electors of a restricted locality to determine whether the provisions of a completed act ... shall become operative or shall be taken advantage of." *People v. Kennedy*, 101 N.E. 442, 447 (N.Y. 1913); *see Opinion of the Justices*, 115 N.H. 228, 230-31, 338 A.2d 553, 555 (1975) (no unconstitutional delegation of authority when legislature establishes general act but leaves determination of whether it shall have force of law to governing bodies of localities to be affected or to people themselves); *Bowles v. Landaff*, 59 N.H. 164, 192 (1879) (legislature may delegate power of local legislation to citizens and town). In New Hampshire, this exception is implied from the tradition of local self-government. *Gould*, 59 N.H. at 276;

*Hayes*, 61 N.H. at 329. Even under this exception, however, the scope of what may be delegated is limited: the legislation must involve matters of local concern. *See Barnett*, 176 N.E. at 114.

The second rule applicable to these cases is that the legislature may properly enact a law, the effect of which is contingent upon the occurrence of some future event. *See Marr v. Fisher*, 187 P.2d 966, 968 (Or. 1947). Although "[t]he legislature cannot delegate its power to make a law[,] ... it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend." *Barnett*, 176 N.E. at 113 (quotation omitted). The reasoning for this rule is that by conditioning the law's effectiveness upon some future contingency, the legislature has merely exercised its discretion to determine today what might make the law expedient or inexpedient in the future. This is a proper exercise of legislative discretion. *See Diversified Inv. Partnership v. DSHS*, 775 P.2d 947, 951 (Wash. 1989); *Brawner*, 119 A. at 253.

The question then becomes whether enacting a law to become effective only upon the approval of the electorate is a proper exercise of legislative discretion, rather than an unconstitutional delegation. In *Hayes*, 61 N.H. at 329-30, the court considered whether a statute that required the majority of voters to approve before it would go into effect was constitutional. *Id.* at 338-39. The court held the referendum feature of the law unconstitutional as an impermissible delegation of legislative power. The court concluded that any attempt by the legislature to redelegate the legislative power back to the people to be exercised by a referendum vote would violate the provisions of Part II, Article 2 that invest the senate and the house of representatives with the "supreme legislative power."

> One of the settled maxims in constitutional law is, that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority. Where the sovereign power of the state has located the authority, there it must remain; and by the constitutional agency alone the laws must be made until the constitution itself is changed. The power to whose judgment, wisdom, and patriotism this high prerogative has been intrusted cannot relieve itself of the responsibility by choosing other agencies upon which the power shall be devolved, nor can it substitute the judgment, wisdom, and patriotism of any other body for those to which alone the people have seen fit to confide this sovereign trust.

*Id.* at 325 (quotation omitted).

> In the organization of the state government, for reasons by them deemed sufficient, the people vested the supreme legislative power not in themselves, but in certain agents, as a personal trust to be executed under the obligation of an official oath. By this oath, they bound each senator and representative "accepting the trust" to the support of the constitution, and the constitutional performance of his fiduciary duty. They were of opinion that while there might be good reason for granting to municipalities a limited power of making local law, it was not wise to attempt to carry on the work of state legislation in town-meeting.

*Id.* at 329 (citations omitted).

The State Constitution has made no general provision for a referendum of any act of the legislature to a vote of the people of the whole State to determine whether or not that act shall become a law.

> It is universally agreed that the Legislature cannot delegate its lawmaking power, and in order to evade the force of that rule courts which felt constrained to uphold such a referendum were driven to the necessity of supplying some formula which would at the same time recognize and approve the rule and disapprove and neutralize it, and the "contingency" theory was the result. We cannot follow that course. Desirable as it is to support and uphold the acts of the Legislature, we cannot do so at the expense of the Constitution of the state. Nor can we break old laws to make new ones. And it seems very clear that, if the Legislature cannot delegate to the people the lawmaking power which the people delegated to them, then it cannot pass a valid act which can only become a law in the event that the people of the state approve it.

*Brawner*, 119 A. at 253. The people of this State delegated to the legislature the power of making its laws. That body cannot redelegate to the people themselves the power and authority thereby conferred upon it by making the validity of a statute affecting the whole State dependent upon a vote of the people.

> Had the constitution conferred validity upon every statute made to take effect upon a contingency, the delegation of powers of municipal legislation need not have been autho-

rized by the principle of local government; all law-making power would have been negotiable; and the personal trust of state legislation, inalienably vested in the senate and house by the constitution, could have been divested in one case and in all cases by conditional forms of enactment.

*Hayes*, 61 N.H. at 338.

■ We conclude that the bill proposes an unconstitutional delegation of power from the legislature. The purpose of the bill is to "authorize the legislature to seek the consent of the people, through a binding referendum, for a newly established tax." If the people are to say, by way of popular vote, whether or not an act shall become law, they are put in the place of the legislature. The vote of the people becomes the determining factor whether an act shall be the law or not, not simply a contingency upon which certain things are or are not to be done under the law. This would grant the people the "supreme legislative power" that by the constitution is vested in the senate and house of representatives.

It is asserted that because the voters are not choosing whether or not a tax plan would become law, but only which of two plans already enacted into law would be enforced, the voters would not be exercising general legislative power. Although two plans would initially be enacted into law, only one of those plans would have the force and effect of law, and it would be the voters who would have the final say. "The legislature has no power to make a statute dependent on such a contingency, because it would be confiding to others that legislative discretion which they are bound to exercise themselves, and which they cannot delegate or commit to any other man or men to be exercised." *Hayes*, 61 N.H. at 326-27 (quotation omitted).

It was urged in several of the comments filed in this matter that this court construe the language in Part I, Article 28 so as to allow a referendum as proposed in the bill because of the significance of the issues presented. Such contentions are not properly before us. We reiterate what we said over one hundred years ago:

[W]e recognize the doctrine, so often expressed, that we have nothing to do with the propriety, expediency, or policy of any law; and that these considerations concern the legislature, and not us; that our sole duty, when the validity of any statute is challenged, is to ascertain and declare whether it conflicts with the constitution as the paramount

law, leaving all other considerations with the legislature and people, where they of right belong.

*Express Co.*, 60 N.H. at 234 (Stanley, J.).

DAVID A. BROCK
WILLIAM R. JOHNSON
W. STEPHEN THAYER, III
SHERMAN D. HORTON, JR.
JOHN T. BRODERICK, JR.

March 11, 1999

*Alan L. Reische* and *Jennifer P. Hopkins*, of Manchester, filed a memorandum on behalf of Governor Jeanne Shaheen in support of negative answers to the questions.

*Philip T. McLaughlin*, attorney general (*Steven M. Houran*, deputy attorney general, *Martin P. Honigberg*, senior assistant attorney general, *Anne M. Edwards*, assistant attorney general, and *Mary E. Schwarzer*, attorney, on the memorandum), filed a memorandum in support of negative answers to the questions.

*Dean, Rice & Kane, P.A.*, of Manchester (*Anne Davidson*, senate counsel, on the memorandum), filed a memorandum on behalf of President Pro Tempore Senator Sylvia Larsen in support of negative answers to the questions.

*Loretta S. Platt*, house general counsel, and *Betsy B. Miller*, house legal counsel, filed a memorandum on behalf of the speaker of the house and other members of the New Hampshire General Court in support of affirmative answers to the questions.

*Stein, Volinsky and Callaghan, P.A.*, of Concord (*Scott F. Johnson* and *Andru H. Volinsky* on the memorandum), and *John E. Tobin*, of Concord, filed a memorandum on behalf of the Claremont petitioners in support of affirmative answers to the questions.

*Eugene M. Van Loan III*, of Manchester, filed a memorandum in support of affirmative answers to the questions.

*Tarbell Professional Association*, of Concord (*Edward C. Mosca* on the memorandum), filed a memorandum on behalf of Granite State Taxpayers, Inc. in support of affirmative answers to the questions.

*Representative Frank V. Sapareto*, of Derry, filed a memorandum in support of affirmative answers to the questions.

*Representative Peter Hoe Burling*, of Cornish, filed a memorandum in support of negative answers to the questions presented.

*Senator Clifton C. Below*, of Lebanon, filed a memorandum in support of negative answers to the questions presented.

*Francis M. Henry*, of Nashua, filed a memorandum in support of affirmative answers to the questions.

*Joseph S. Haas, Jr.*, of Ashland, filed a memorandum in support of affirmative answers to the questions presented.

*Kenneth E. Blevens*, of Bow, filed a memorandum.